1  **ELIZABETH M. BARROS**
   California Bar No. 227629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5030
   Telephone:  (619) 234-8467 ext. 3701
4

5  Attorneys for Mr. Aramburo

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                  **(HONORABLE THOMAS J. WHELAN)**

11  UNITED STATES OF AMERICA,          )   U.S.D.C. No. 08CR0822-W
                                       )
12                                     )   Date:    May 19, 2008
                                       )   Time:    2:00 p.m.
13                  Plaintiff,         )
                                       )
14                                     )   NOTICE OF MOTIONS AND MOTIONS TO:
                                       )
15  v.                                 )   (1)   COMPEL DISCOVERY/ PRESERVE
                                       )         EVIDENCE;
16                                     )   (2)   SUPPRESS EVIDENCE UNDER THE
                                       )         FOURTH AMENDMENT;
17  ARMANDO ARAMBURO-URIBE,            )   (3)   SUPPRESS STATEMENTS PURSUANT TO
                                       )         THE FIFTH AMENDMENT AND COMPEL
18                                     )         AN EVIDENTIARY HEARING; AND
                                       )   (4)   GRANT LEAVE TO FILE FURTHER
19                  Defendant.         )         MOTIONS
                                       )
20  _____)     _____

21  TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
          DOUG KEEHN, ASSISTANT UNITED STATES ATTORNEY.
22

23         PLEASE TAKE NOTICE that on May 19, 2008 at 2:00 p.m., or as soon thereafter as counsel

24  may be heard, Defendant Armando Aramburo-Uribe, by and through his attorneys, Elizabeth M. Barros

25  and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following

26  motions.

27  //

28  //

## MOTIONS

Defendant Armando Aramburo-Uribe, by and through his attorneys, Elizabeth M. Barros and Federal Defenders of San Diego, Inc., moves this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

       (1)    Compel Discovery/ Preserve Evidence;

       (2)    Suppress Evidence Under the Fourth Amendment;

       (3)    Suppress Statements Pursuant to the Fifth Amendment and Compel an Evidentiary Hearing; and

       (4)    Grant Leave to File Further Motions.

This motion is based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

                      Respectfully submitted,

                      /s/ Elizabeth M. Barros

Dated:  May 5, 2008           **ELIZABETH M. BARROS**
                      Federal Defenders of San Diego, Inc.
                      Attorneys for Armando Aramburo-Uribe

1  **ELIZABETH M. BARROS**
   California Bar No. 227629
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5030
   Telephone:  (619) 234-8467 ext. 3701
4

5  Attorneys for Armando Aramburo-Uribe

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                   **(HONORABLE THOMAS J. WHELAN)**

11 UNITED STATES OF AMERICA,          )   U.S.D.C. No. 08CR0822-W
                                      )
12          Plaintiff,                )   Date:    May 19, 2008
                                      )   Time:    2:00 p.m.
13 v.                                 )
                                      )   **S T A T E M E N T   O F   F A C T S   A N D**
14 ARMANDO ARAMBURO-URIBE,            )   **MEMORANDUM   OF   POINTS   AND**
                                      )   **AUTHORITIES IN SUPPORT OF MOTIONS**
15          Defendant.                )
                                      )
16 _____  )

17                              **I.**

18                      **STATEMENT OF FACTS**[1]

19          Armando Aramburo-Uribe is a twenty-three year old young man with no prior criminal record. On

20 February 20, 2008, at approximately 1:00 p.m., Mr. Aramburo-Uribe was stopped by Officer Ballesteros as

21 he exited the Westside Pedestrian Gate Area (WPGA) at the San Ysidro Port of Entry.  The WPGA is the area

22 that leads from the United States into Mexico.  On that day, law enforcement officer were operating a

23 temporary checkpoint inside the WPGA to inspect pedestrians heading southbound into Mexico.

24          According to the report of investigation, Mr. Aramburo-Uribe was seen exiting the pedestrian line

25 leading from the United States into Mexico and seen returning northbound.  Officer Ballesteros believed that

26 _____

27          [1] This statement of facts is taken from the criminal complaint, indictment, and discovery
28 provided by the government.  Mr. Aramburo does not adopt these facts and reserves the right to
   challenge these facts at any future proceeding.  Mr. Aramburo will file a declaration regarding his
   recollection of the events prior to the hearing on these motions.

1    Mr. Aramburo-Uribe turned around and decided not to enter Mexico after observing law enforcement

2    conducting random southbound inspections. Officer Ballesteros stopped Mr. Aramburo-Uribe after he turned

3    around and was walking away from the WPGA. Officer Ballesteros asked Mr. Aramburo-Uribe for his

4    identification, patted him down, and asked him to step aside. Officer Ballesteros did not advise

5    Mr. Aramburo-Uribe of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), or that he was free to leave

6    or refuse consent for a search. Mr. Aramburo-Uribe was ordered to produce the contents of his pockets and

7    questioned.

8        According to the report of investigation, when asked by Officer Ballesteros where he was going,

9    Mr. Aramburo-Uribe stated that he was going to Mexico, but that he left his phone at the Nike store.

10   According to the report, Mr. Aramburo-Uribe appeared nervous. Officer Ballesteros asked Mr. Aramburo-

11   Uribe why he was nervous and Mr. Aramburo-Uribe allegedly stated, "because you're talking to me." Officer

12   Ballesteros claims to have asked Mr. Aramburo-Uribe if he was carrying any "money." He further claims that

13   Mr. Aramburo-Uribe stated that he was not carrying money. However, when asked to empty his pockets,

14   Mr. Aramburo-Uribe produced several blank money orders. Officer Ballesteros estimated that they totaled

15   around $11,000. Officer Ballesteros then advised Mr. Aramburo-Uribe of the reporting requirements, which

16   Mr. Aramburo-Uribe acknowledged. The report of investigation notes that there were no currency reporting

17   signs posted in the WPGA.

18       Despite the fact that Mr. Aramburo-Uribe never reached the inspection area, was leaving the WPGA

19   when stopped, and was no longer heading toward Mexico, Officer Ballesteros took Mr. Aramburo-Uribe,

20   along with his identification which he had taken from him, and what he believed to be approximately $11,000

21   to the old Imperial Beach Border Patrol Station, outside the public's view (per the agent's report). At the

22   older Border Patrol Station, Mr. Aramburo-Uribe was further questioned and searched, again without the

23   benefit of <u>Miranda</u> warnings.

24       Approximately five hours later, Mr. Aramburo-Uribe was contacted by three additional agents and

25   advised of his <u>Miranda</u> warnings, which he invoked. Mr. Aramburo-Uribe was transported to the

26   Metropolitan Correctional Center ("MCC") and charged by complaint with Bulk Cash Smuggling in violation

27   of 31 U.S.C. § 5332. An information was later filed charging him with Failure to File Reports on Exporting

28   Monetary Instruments in violation of 31 U.S.C. § 5316(a)(1)(A) and Criminal Forfeiture in violation of 18

U.S.C. § 982(a)(1).

To date, counsel for Mr. Aramburo-Uribe has received only 31 pages of discovery. Counsel has not received a videotape of Mr. Aramburo-Uribe's statements or any written statement made by him (although discovery indicates that he was asked to write down how much money he was carrying). Counsel has not received any video surveillance of the area either, despite her requests for any video surveillance.

## II.

## MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

Mr. Aramburo-Uribe moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items about which the prosecutor knows, but includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989). To date, the defendant has received approximately 31 pages discovery.

1. The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; and any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

2. Arrest Reports, Notes and Dispatch Tapes. Defendant also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his arrest or any questioning, if such reports have not already been produced in their entirety, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and Brady v. Maryland, 373 U.S. 83 (1963). See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting

officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(i).  Preservation of rough notes is requested, whether or not the government deems them discoverable.

3.  <u>Brady Material</u>.  The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case.  Impeachment and exculpatory evidence both fall within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

4.  <u>Any Information That May Result in a Lower Sentence</u>.  As discussed above, any information which may result in a more favorable sentence must also be disclosed pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The Government must disclose any cooperation or attempted cooperation by the defendant, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines.  Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the Guidelines.

5.  <u>The Defendant's Prior Record</u>.  Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D).  Counsel specifically requests a complete copy of any criminal record.

6.  <u>Any Proposed 404(b) Evidence</u>.  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  Sufficient notice requires the government to "articulate <u>precisely</u> the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." <u>United States v. Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> <u>United States v. Brooke</u>, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions).

This includes any "TECS" records (records of prior border crossings) that the Government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal.  Although there is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. <u>United States v. Vega</u>, 188 F.3d 1150, 1154-

1  1155 (9th Cir. 1999).

2      The defendant requests that such notice be given at least three weeks before trial to give the defense

3  time to adequately investigate and prepare for trial.

4      7.  <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant,

5  is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

6      8.  <u>Request for Preservation of Evidence</u>.  The defense specifically requests that all dispatch tapes

7  or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,

8  or care of the government and which relate to the arrest or the events leading to the arrest in this case be

9  preserved.  This request includes, but is not limited to, the agents' rough notes, the results of any fingerprint

10  analysis, the defendant's personal effects, any evidence seized from the defendant or any third party, and **any**

11  **video surveillance of the Westside Pedestrian Gate Area (WPGA) where Mr. Aramburo-Uribe allegedly**

12  **got out of line and the area where he was subsequently stopped, as well video surveillance of the former**

13  **Imperial Beach Border Patrol Station where Mr. Aramburo-Uribe was questioned (a second time)**.

14  This request also includes any material or percipient witnesses who might be deported or otherwise likely to

15  become unavailable (e.g. undocumented aliens and transients).

16      It is requested that the prosecutor be ordered to <u>question</u> all the agencies and individuals involved

17  in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to

18  inform those parties to preserve any such evidence.

19      9.  <u>Henthorn Material</u>. The defendant requests that the Assistant United States Attorney ("AUSA")

20  assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved

21  in the present case for impeachment material.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 437, 438 (1995) (holding that

22  "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the

23  government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

24  1991).  This request includes, but is not limited to, any complaints filed against the agent, whether or not the

25  investigating authority has taken any action, as well as any matter for which a disciplinary review was

26  undertaken, whether or not any disciplinary action was ultimately recommended.  The defendant further

27  requests production of any such information at least one week prior to the motion hearing and three weeks

28  prior to trial.  If the prosecutor is uncertain whether certain information should be disclosed, this information

1  should be produced to the Court in advance of the motion hearing and the trial for an in camera inspection.

2      10.  <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect, copy, and test, as

3  necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged

4  narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or

5  intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R.

6  Crim. P. 16(a)(1)(E).  Specifically, the defendant requests copies of any video surveillance of Mr. Aramburo-

7  Uribe, as well as the area where Mr. Aramburo-Uribe was stopped, searched, and questioned.

8      11.  <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary of

9  the testimony of any person that the government intends to call as an expert witness during its case in chief.

10  Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well

11  as the bases and the reasons for the opinion(s).  <u>See</u> <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001)

12  (finding that government's written expert notice did not adequately summarize or describe police detective's

13  testimony in drug prosecution where notice provided only a list of the general subject matters to be covered

14  and failed to identify what opinion the expert would offer on those subjects).  This request includes, but is not

15  limited to, disclosure of the qualifications of any government witness who will testify that he understands

16  and/or speaks Spanish or any other foreign language that may have been used during the course of an

17  interview with the defendant or any other witness.

18      The defense requests the notice of expert testimony be provided at a minimum of three weeks prior

19  to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining

20  its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing

21  in advance of trial to determine the admissibility of qualifications of any expert.  <u>See</u> <u>Kumho v.  Carmichael</u>

22  <u>Tire Co.</u>, 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine,

23  reliability and relevancy of expert testimony).

24      12.  <u>Impeachment evidence</u>.  The defendant requests any evidence that any prospective government

25  witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has

26  made a statement favorable to the defendant.  <u>See</u> Fed. R. Evid. 608, 609 and 613.  Such evidence is

27  discoverable under <u>Brady v. Maryland</u>.  <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness'

28  prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness'

credibility).

13. <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defense requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

14. <u>Evidence of Bias or Motive to Lie</u>. The defense requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988).

15. <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>. The defendant requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980).

16. <u>Witness Addresses</u>. The defense requests the name and last known address of each prospective government witness. <u>See United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

17. <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any witness who made any arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged. <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v. Jago</u>, 575 F.2d 1164,1168 (6th Cir.1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980).

18. <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert. <u>United States v. Bailleaux</u>, 685

1  F.2d 1105 (9th Cir. 1982). This includes Grand Jury transcripts which are relevant to the defense's potential

2  motion to dismiss the indictment.

3       19. <u>Jencks Act Material</u>. The defendant requests production in advance of the motion hearing or

4  trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act,

5  18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough" notes constitute an

6  accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under

7  section 3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v.</u>

8  <u>Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitute Jencks material when an agent

9  reviews notes with the subject of the interview); <u>see also</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-808 (9th

10 Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow the

11 defendant to investigate the Jencks material. Defendant requests pre-trial disclosure of such statements to

12 avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any

13 Jencks statements during cross-examination.

14      20. <u>Giglio Information</u>. Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant

15 requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange

16 for their testimony in this case, and all other information which could arguably be used for the impeachment

17 of any government witnesses.

18      21. <u>Agreements Between the Government and Witnesses</u>. The defendant requests discovery

19 regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future

20 compensation, or any other kind of agreement or understanding, including any implicit understanding relating

21 to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and

22 the government (federal, state and/or local). This request also includes any discussion with a potential witness

23 about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea

24 bargain, even if no bargain was made or the advice not followed.

25      22. <u>Informants and Cooperating Witnesses</u>. The defendant requests disclosure of the names and

26 addresses of all informants or cooperating witnesses used or to be used in this case, and in particular,

27 disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime

28 charged against the defendant. The government must disclose the informant's identity and location, as well

1  as disclose the existence of any other percipient witness unknown or unknowable to the defense.  Roviaro v.

2  United States, 353 U.S. 52, 61-62 (1957).  The government must disclose any information derived from

3  informants which exculpates or tends to exculpate the defendant.

4       23.  Bias by Informants or Cooperating Witnesses.  The defendant requests disclosure of any

5  information indicating bias on the part of any informant or cooperating witness.  Giglio v. United States,

6  405 U.S. 150 (1972).  Such information would include what, if any, inducements, favors, payments or threats

7  were made to the witness to secure cooperation with the authorities.

8       24.  Personnel Records of Government Officers Involved in the Arrest.  Defendant requests all citizen

9  complaints and other related internal affairs documents involving any of the immigration officers or other law

10  enforcement officers who were involved in the investigation, arrest and interrogation of Defendant.  See

11  Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974).  Because of the sensitive nature of these documents,

12  defense counsel will be unable to procure them from any other source.

13       25.  Training of Relevant Law Enforcement Officers.  Defendant requests copies of all written,

14  videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement

15  agencies involved in the case (Immigration and Customs Enforcement, U.S. Customs and Border Protection,

16  Border Patrol, Department of Homeland Security, etc.) to their employees regarding:  (a) the handling of

17  vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary

18  inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the

19  search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent

20  to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights;

21  (f) the questioning of suspects and witnesses. Defendant also requests all written or otherwise attainable

22  information regarding the training of Customs agents at ports of entry in California to detect or discover

23  narcotics in vehicles entering the United States, including any training offered to the law enforcement agencies

24  by the DEA or other law enforcement agencies or individuals.

25       26. Performance Goals and Policy Awards. Defendant requests disclosure of information regarding

26  standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers

27  involved in the case (Customs, Border Patrol, ICE, etc.) to the extent such information relates to the detection

28  of contraband. This request specifically includes information concerning performance goals, policy awards,

1 and the standards used by Customs for commending, demoting, or promoting agents for their performance

2 at the port of entry and their success or failure to detect illegal narcotics in general.

3     27. <u>Opportunity to View and Photograph the Contraband</u>.  Defendant hereby requests an opportunity

4 to view and photograph the monetary instruments confiscated in this case as well as the containers in which

5 they were allegedly found.

6     28. <u>TECS Reports</u>.  Defendant requests all TECS reports pertaining to Defendant.

7     29. <u>Reports of Scientific Tests or Examinations</u>.  Pursuant to Fed. R. Crim. P. 16(a)(1)(F), the

8 defendant requests the reports of all tests and examinations conducted upon the evidence in this case.

9 Including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within

10 the possession, custody, or control of the government, the existence of which is known, or by the exercise of

11 due diligence may become known, to the attorney for the government, and which are material to the

12 preparation of the defense or are intended for use by the government as evidence in chief at trial.

13     30. <u>Residual Request</u>.  The defense intends by this discovery motion to invoke his rights to discovery

14 to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of

15 the United States.  This request specifically includes all subsections of Rule 16. The defendant requests that

16 the government provide him and his attorney with the above requested material sufficiently in advance of trial.

17 <b>III.</b>

18 <b><u>MOTION TO SUPPRESS EVIDENCE UNDER THE FOURTH AMENDMENT</u></b>

19     The Fourth Amendment of the United States Constitution guarantees the right of people to be secure

20 in their persons, houses, papers and effects against unreasonable searches and seizures. U.S. Const. Amend.

21 IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per

22 se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-

23 delineated exceptions." <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982) (citations omitted).

24 **A.**     **Officer Ballesteros Lacked Reasonable Suspicion to Stop and Detain Mr. Aramburo-Uribe As He Was Leaving The Westside Pedestrian Gate Area.**

25

26     **1.**     **Officer Ballesteros Stopped Mr. Aramburo-Uribe.**

27     "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when,

28 taking into account all of the circumstances surrounding the encounter, the police conduct would have

1  communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his

2  business." Kaupp v. Texas, 538 U.S. 626 (2003). See also Wallace v. Batavia School Dist. 101, 68 F.3d 1010

3  (7th Cir.1995) (where teacher momentarily grabbed student's wrist and elbow to escort student out of

4  classroom in order to prevent a fight, a seizure under the Fourth Amendment took place but such seizure was

5  reasonable under the circumstances). Application of physical force is not required for a seizure to occur. See

6  California v. Hodari D., 499 U.S. 621, 625-626 (1991) (A "seizure" occurs where there is *either* an application

7  of physical force, even if extremely slight, or submission to the show of lawful authority); Florida v. Bostick,

8  501 U.S. 429, 436-437 (1991) (Seizure occurs where police conduct communicates to reasonable person that

9  he is not free to leave, or where person's movement is restricted by some other factor, free to decline officers'

10  request or terminate the encounter).

11  In this case, Mr. Aramburo-Uribe was trying to leave the Westside Pedestrian Gate Area when he

12  was prevented from doing so— he was told to stop, produce identification, he was patted down, told to move

13  aside, confronted by the officer with his "nervousness," and told produce the contents of his pockets. Under

14  the circumstances, a reasonable person would not feel free to leave or terminate the encounter with the officer.

15  Thus, Mr. Aramburo-Uribe was "seized" for purposes of the Fourth Amendment when he submitted to Officer

16  Ballesteros' show of authority.

17  **2.    Officer Ballesteros Lacked Reasonable Suspicion to Stop Mr. Aramburo-Uribe.**

18  Reasonable suspicion requires that the officer making a stop be "aware of specific, articulable facts

19  which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion."

20  United States v. Montero-Camargo, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (emphasis added). A mere

21  "hunch" is insufficient to justify a such a stop. Terry v. Ohio, 392 U.S. 1, 22, 27 (1968). At a minimum,

22  reasonable suspicion is required to stop individuals who turn around before reaching a checkpoint. United

23  States v. Ogilvie, 527 F.2d 330, 331 (9th Cir. 1975) ("Because Ogilvie was not stopped at the checkpoint in

24  the ordinary course of its operations, we treat this stop as falling with the 'roving patrol' variety. The

25  minimum requirement to justify such a stop is that the Border Patrol officers possess a reasonable suspicion,

26  founded on specific articulable facts . . . .").

27  Officer Ballesteros stopped Mr. Aramburo-Uribe after he turned around before reaching the

28  temporary inspection site at the WPGA. Therefore, reasonable suspicion, based on specific articulable facts,

1   is required to justify the initial stop in this case. Officer Ballesteros did not have a reasonable suspicion, based

2   on specific, articulable facts which, when considered with objective and reasonable inferences, formed a basis

3   for particularized suspicion that Mr. Aramburo-Uribe was engaged in criminal activity.

4         According to the report of investigation, Officer Ballesteros stopped Mr. Aramburo-Uribe because

5   he got out of the line to go into Mexico and turned around and walked northbound. Thus, Officer Ballesteros

6   believed that Mr. Aramburo-Uribe was trying to avoid inspection by law enforcement. However, turning

7   around and changing directions before a checkpoint is insufficient to establish reasonable suspicion. Ogilvie,

8   527 F.2d at 332 ("We hold that the proximity of the turn to the checkpoint, regardless of the legality of the

9   checkpoint, was not a sufficient foundation on which to rest a reasonable suspicion."). See also Wong Sun

10  v. United States, 371 U.S. 471, 483, n. 10 (1963). Accordingly, this Court must suppress all evidence

11  obtained from the stop, questioning and search of Mr. Aramburo-Uribe. Wong Sun, 371 U.S. 484-486.

12  **B.**    **Mr. Aramburo-Uribe's Fourth Amendment Rights Were Violated When Officer Ballesteros**
       **Seized Him Without Reasonable Suspicion or Probable Cause.**

13

14        "It is basic that an arrest with or without a warrant must stand upon firmer ground than mere

15  suspicion . . . ." Wong Sun, 371 U.S. at 479. "The history of the use, and not infrequent abuse, of the power

16  to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave

17  law-abiding citizens at the mercy of the officers' whim or caprice.'" Id. The existence of probable cause

18  depends on "whether at that moment [the arrest was made] the facts and circumstances within [the officers']

19  knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent

20  man in believing that the petitioner had committed or was committing an offense." Beck v. State of Ohio,

21  379 U.S. 89, 91 (1964). "The history of the use, and not infrequent abuse, of the power to arrest cautions that

22  a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy

23  of the officers' whim or caprice.'" Wong Sun, 371 U.S. at 479. Even if this Court finds that the initial stop

24  of Mr. Aramburo-Uribe complied with the Fourth Amendment, his subsequent seizure was not supported by

25  probable cause, or even reasonable suspicion. Thus, all evidence obtained therefrom must be suppressed.

26  Wong Sun, 371 U.S. 471.

27        According to the report of investigation, upon being stopped, Officer Ballesteros asked

28  Mr. Aramburo-Uribe where he was going and he stated that he was going to Mexico. He also stated that he

1  left his phone at the Nike store.  According to the report, Mr. Aramburo-Uribe appeared nervous. Officer

2  Ballesteros asked Mr. Aramburo-Uribe why he was nervous and Mr. Aramburo-Uribe allegedly stated,

3  "because you're talking to me."  Officer Ballesteros claims to have asked Mr. Aramburo-Uribe if he was

4  carrying any "money" and Mr. Aramburo-Uribe allegedly stated that he was not carrying money.  However,

5  when asked to empty his pockets, Mr. Aramburo-Uribe produced several blank money orders.  Officer

6  Ballesteros estimated that they totaled around $11,000. Officer Ballesteros then advised Mr. Aramburo-Uribe

7  of the reporting requirements, which Mr. Aramburo-Uribe acknowledged. The report of investigation notes

8  that there were no currency reporting signs posted in the WPGA.

9      Despite the fact that Mr. Aramburo-Uribe never reached the inspection area, was leaving the WPGA

10  when stopped, and was no longer headed toward Mexico, Officer Ballesteros physically escorted

11  Mr. Aramburo-Uribe to the old Imperial Beach Border Patrol Station.  At the time, Officer Ballesteros had

12  in his possession Mr. Aramburo-Uribe's identification, which he had previously taken from him, and what

13  he believed to be approximately $11,000 in money orders.  The officer's actions amounted to an arrest for

14  which probable cause was required.  See e.g., Kaupp, 538 U.S. at 630 (involuntary transport of defendant to

15  police station is sufficiently like arrest to invoke traditional rule that arrests may be made only upon probable

16  cause); United States v. Beck, 598 F.2d 497, 501-502 (9th Cir. 1979) (holding that defendants were arrested

17  and not merely subjected to investigative detention where three law enforcement vehicles boxed in taxi in

18  which defendants were passengers and defendants were physically escorted by two agents to separate locations

19  where they were questioned and frisked); Commonwealth v. Bosurgi, 411 Pa. 56, 68 (Pa. 1963) ("An arrest

20  may be accomplished by an act that indicates an intention to take a person into custody and subjects him to

21  the actual control of the police officers.").

22      In any event, Officer Ballesteros did not have either reasonable suspicion or probable cause to further

23  detain Mr. Aramburo-Uribe.  Although according to Officer Ballesteros's report, Mr. Aramburo-Uribe did

24  not declare the money orders, he did not have a duty to declare them.  Mr. Aramburo was not leaving the

25  United States at the time he was stopped by Officer Ballesteros, but rather, he was heading north to look for

26  his phone.

27      Although the report of investigation indicates that upon being stopped, Mr. Aramburo-Uribe was

28  acting nervously, a large number of people who are stopped by law enforcement act nervously.  Nervousness

1  far from establishes probable cause.  In fact, the Ninth Circuit has repeatedly held that nervousness does not

2  even establish reasonable suspicion.  Moreno v. Baca, 400 F.3d 1152, 1168 (9th Cir. 2005) (reaffirming the

3  well-established principle that nervousness in a high crime area, without more, does not create reasonable

4  suspicion); United States v. Chavez-Valenzuela, 268 F.3d 719, 726 (9th Cir. 2001) (holding that "nervousness

5  alone" does not give rise to reasonable suspicion), amended by 279 F.3d 1062 (9th Cir. 2002); United States

6  v. Garcia-Camacho, 53 F.3d 244, 247 (9th Cir. 1995) (holding that a "surprised" and "terrified" look on the

7  defendant's face when pulled over by law enforcement does not give rise to reasonable suspicion); United

8  States v. Rodriguez, 976 F.2d 592, 595-96 (9th Cir. 1992) (holding that the defendant's repeated glances at

9  law enforcement officers through a rear-view mirror did not give rise to reasonable suspicion).

10          Thus, Mr. Aramburo-Uribe's nervousness and alleged failure to declare the money order did not give

11  rise to reasonable suspicion, let alone probable cause, that he committed a crime.  Therefore, this Court must

12  suppress all evidence obtained as a fruit of the search and seizure of Mr. Aramburo-Uribe.

13                                                              **IV.**

14  **MOTION TO SUPPRESS STATEMENTS PURSUANT TO THE FIFTH AMENDMENT AND COMPEL AN EVIDENTIARY HEARING**

15

16          Mr. Aramburo-Uribe moves to suppress any statements given in violation of Miranda v. Arizona,

17  384 U.S. 436 (1966).  An individual who is questioned while "in custody or otherwise deprived of his freedom

18  of action in a significant way" must first be advised of his Miranda rights.  Id., at 444.  In Dickerson v. United

19  States, 530 U.S. 428 (2000), the Supreme Court held that Miranda warnings are not merely prophylactic;

20  rather, they are of constitutional magnitude.  Id. at 444. ("[W]e conclude that  Miranda announced a

21  constitutional rule").

22          Mr. Aramburo-Uribe was initially questioned after being ordered to produce his identification,

23  frisked, and ordered to step-aside.  He was also confronted with his nervousness.  These facts support the

24  conclusion that the initial interrogation was custodial and thus should have been proceeded by Miranda

25  warnings.  Because Mr. Aramburo-Uribe was not provided with Miranda warnings prior to this initial

26  questioning, his statements should be suppressed regardless of whether this Court determines that his seizure

27  was reasonable for Fourth Amendment purposes.  See United States v. Kim, 292 F.3d 969, 976 (9th Cir. 2002)

28  (noting that whether a person has been unreasonably seized for Fourth Amendment purposes and whether an

individual is "in custody" for Fifth Amendment purposes are two different issues).

Mr. Aramburo-Uribe was again questioned, without the benefit of <u>Miranda</u> warnings after being taken to the old Imperial Beach Border Patrol Station. Mr. Aramburo-Uribe was clearly in custody at that time. Thus, his second set of statements made inside the old border patrol station and outside the public's view must also be suppressed.

Alternatively, Mr. Aramburo-Uribe requests that this Court hold an evidentiary hearing to determine the admissibility of any alleged statements. If a waiver of    <u>Miranda</u> is alleged, the government bears the burden of demonstrating the waiver by clear and convincing evidence. <u>See</u> <u>Schell v. Witek</u>, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc) ("[c]onstitutional rights may ordinarily be waived only if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent") (internal quotation marks and citations omitted). Moreover, this Court must "indulge every reasonable presumption against waiver of fundamental constitutional rights." <u>Id</u>. at 1024 (internal quotation marks and citations omitted). According, Mr. Aramburo-Uribe  requests a voluntariness hearing pursuant to 18 U.S.C. § 3501 and a <u>Miranda</u> hearing to determine the admissibility of any alleged statement.

## V.

## <u>MOTION FOR LEAVE TO FILE FURTHER MOTIONS</u>

Mr. Aramburo-Uribe has received only 31 pages of discovery. Mr. Aramburo-Uribe believes discovery is not yet complete and respectfully requests the opportunity to file further motions as may be necessary after reviewing additional discovery and conducting independent investigation.

## VI.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Aramburo-Uribe respectfully requests that the Court grant the above motions.

Respectfully submitted,

/s/ Elizabeth M. Barros
Dated: May 5, 2008          **ELIZABETH M. BARROS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Aramburo-Uribe